IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NORMAN WELLS,                               )
    Plaintiff,                             )
                                            )
    v.                                     )   Civil Action No. 3:24CV61 (RCY)
                                            )
TRANS UNION, LLC, *et al.*,                 )
    Defendants.                            )
                                            )

## MEMORANDUM OPINION

The case is before the Court on Defendant Experian Information Solutions's ("Experian") Motion to Compel Arbitration ("Motion to Compel"), ECF No. 37. The Motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will grant the Motion to Compel.

### I. BACKGROUND[1]

This action was filed pursuant to the Fair Credit Reporting Act ("FCRA"). Compl., ECF No. 1. Plaintiff Norman Wells alleges that Defendant Experian violated Plaintiff's rights by including "fraudulent and defamatory" information on Plaintiff's consumer reports. *Id.* ¶ 49. In the instant motion, Experian asks the Court to compel the parties to engage in arbitration, rather than the present litigation, contending that it had an agreement with Plaintiff to arbitrate "all issues" relating to the matter at bar. Mot. Compel, ECF No. 37; Mem. Law Supp. Experian's Mot. Compel

---

[1] "[T]he applicable legal standard [in considering a motion to compel arbitration] is similar to that applied at summary judgment. Specifically, the pleadings and 'all relevant, admissible evidence submitted by the parties' are considered and 'all reasonable inferences' are drawn in favor of the non-moving party." *Meridian Imaging Sols., Inc. v. OMNI Bus. Sols. LLC*, 250 F. Supp. 3d 13, 21 (E.D. Va. 2017); *see also Grant-Fletcher v. Collecto, Inc.*, 2014 WL 1877410, at *3 (D. Md. May 9, 2014).

("Mem. Supp. Mot Compel), ECF No. 38. Relevant here, Plaintiff is a resident of Mississippi, Mem. Opp'n Mot. Compel ("Mem. Opp'n") Ex. 4 at 1, ECF No. 45-4, and he similarly was so as of the date he entered into the agreement with Experian. Supp. Decl. Norman Wells ¶ 4, ECF No. 69-1.

**A. Plaintiff's CreditWorks Account**

Experian's purported contract with Plaintiff stems from Plaintiff's membership with Experian's credit monitoring service "CreditWorks." Mem. Supp. Mot. Compel Ex. A ("Smith Declaration") ¶¶ 1–3,[2] ECF No. 38-1. CreditWorks is offered by Experian through its affiliate, ConsumerInfo.com ("CIC"), which does business as Experian Consumer Services ("ECS"). *Id.* ¶ 1. Both Experian and CIC/ECS are wholly owned by Experian Holdings, Inc. *Id.* ¶ 2.

Plaintiff enrolled in the CreditWorks service on August 6, 2017. *Id.* ¶ 3. At that time, in order to enroll, prospective members were required to complete two webforms: the first required the prospective member to enter personal information such as their name and phone number, and the second required the prospective member's social security number, date of birth, and a selected username and password. *Id.* ¶ 4. To submit the second form—and enroll in CreditWorks—the prospective member was required to click a "Submit Secure Order" button. *Id.* ¶ 4. Immediately above that button was the following warning ("Acceptance Statement"): "By clicking Submit Secure Order[,] I accept and agree to your Terms of Use Agreement [("Agreement")], as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy." *Id.* Within the acceptance statement, the phrase "Terms of Use Agreement" was set out in blue letters, visually indicating that the phrase hyperlinked to the Agreement itself. *Id.* In other words, "[w]hen a consumer

---

[2] For both the Smith Declaration and all other relevant filings, the Court applies the pagination assigned by CM/ECF.

clicked on the 'Terms of Use Agreement' [phrase], an additional window would open within the consumer's web browser containing the entire text of the [Agreement]." *Id.*

To successfully enroll in CreditWorks on August 7, 2017, as Plaintiff undisputedly did, *see* Mem. Opp'n Ex. 4 at 2, Plaintiff had to select the "Submit Secure Order" button, thereby manifesting his assent to the linked Agreement. Smith Decl. ¶ 5. Plaintiff used the CreditWorks service until he cancelled his membership on October 18, 2023. *Id.*

**B. Agreement Terms on August 7, 2017**

On the date that Plaintiff enrolled in CreditWorks, the Agreement contained the following arbitration provision:

> ECS and you agree to arbitrate all disputes and claims arising out of this Agreement directly related to the Services or Websites, except any disputes or claims which under governing law are not subject to arbitration. This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us directly relating to the provision of any Service and/or your use of any Website subject to arbitration to the fullest extent permitted by law. . . . This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this arbitration provision.

Smith Decl. Ex. 3 at 7, ECF No. 38-1 at 12–42.

However, the Agreement carves out FCRA claims from its arbitration provision:

> [F]or the avoidance of doubt, any dispute you may have with us arising out of the [FCRA] relating to the information contained in your consumer disclosure or report, including but not limited to claims for alleged inaccuracies, shall not be governed by this agreement to arbitrate.

*Id.*

The Agreement also clarifies:

> All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as the [Agreement]'s other terms and conditions, and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of [the Agreement] including, but not limited to any claim that all or any part of this arbitration provision . . . is void or voidable.

3

*Id.* at 8.

Finally, the arbitration provision defined "ECS," "you" and "us" to include, in relevant part, "our respective parent entities, subsidiaries, affiliates, agents, employees, predecessors in interest, [as well as] successors and assigns." *Id.* at 17.

## II. RELEVANT PROCEDURAL HISTORY

Plaintiff Norman Wells filed this action against Trans Union, LLC, Equifax Information Solutions, LLC, Experian, and Capital One Financial Corporation on January 29, 2024. Compl., ECF No. 1. On May 22, 2024, Experian filed its Motion to Compel and Memorandum in Support. Mot. Compel; Mem. Supp. Mot. Compel, ECF No. 38; Smith Decl., ECF No. 38-1. After the Court granted Plaintiff extended time to file his Response, Order, ECF No. 42, Plaintiff filed his Memorandum in Opposition to Motion to Compel Arbitration ("Memorandum in Opposition"), ECF No. 45, on June 20, 2024. Experian filed its Reply in Support of Experian's Motion to Compel Arbitration ("Reply"), ECF No. 49, on June 28, 2024. At that point, the Motion to Compel was fully briefed. However, from July 2, 2024, to September 9, 2024, Experian filed five Notices of Supplemental Authority, ECF Nos. 51, 58, 61, 62, 63.

## III. LEGAL STANDARD

Congress passed the Federal Arbitration Act ("FAA") "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/ Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). The FAA represents "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "Pursuant to th[is] liberal policy, 'any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration, whether the problem at hand is the

construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 273–74 (4th Cir. 1997) (quoting *Moses H. Cone*, 460 U.S. at 24–25).

The party seeking to compel arbitration under the FAA bears the burden to demonstrate that there is an enforceable agreement that includes an arbitration provision which purports to cover the dispute.[3]  *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002); *see Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001). If the underlying agreement is enforceable, the Court must effectuate the scope of its arbitration agreement; if the arbitration agreement delegates "all issues" to the arbitrator, the Court defers all "gateway" issues of scope and applicability to the arbitrator, even if the movant's argument that the underlying claim should be arbitrated appears "wholly groundless." *Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 257–58 (4th Cir. 2021) (citing 9 U.S.C. § 4) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 71 (2019) (rejecting the Fifth Circuit's "wholly groundless" exception to the FAA). The FAA gives district courts no discretion to do otherwise:

> By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. Thus, insofar as the language of the Act guides [the] disposition of [a] case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4) (emphasis in original); *see Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001); *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001).

---

[3] Beyond that, all a movant must initially show to compel arbitration under the FAA is: (1) the existence of a dispute between the parties; (2) the relationship of the transaction to interstate or foreign commerce; and (3) the failure or refusal of the nonmovant to arbitrate the dispute. *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002). These elements are not at issue here.

## IV. DISCUSSION

In support of its Motion to Compel, Experian argues that the Agreement constitutes an enforceable contract between Experian and Plaintiff to arbitrate "all issues." Mem. Supp. Mot. Compel 2–5.[4] In response, Plaintiff advances three arguments. First, he argues that Experian is not a party to the Agreement and therefore may not enforce its arbitration provision. Mem. Opp'n 15, ECF No. 45. Second, and chiefly, he argues that the Agreement is procedurally unconscionable. *See id.* at 14–24. Finally, Plaintiff argues that the Agreement does not refer *this* matter to arbitration, since the Agreement carves out FCRA claims from arbitration and limits its coverage to those disputes arising from the Agreement.[5] *Id.* at 3, 15–16, 24–27.

The Court finds that the Agreement constitutes an enforceable agreement between Experian and Plaintiff to arbitrate "all issues." Smith Decl. Ex. 3 at 8. As such, the Court lacks discretion to proceed with adjudicating the matter and will grant the Motion to Compel.

---

[4] Experian cites a litany of district court opinions considering the Agreement and determining that it constitutes an enforceable contract to delegate "all issues" to an arbitrator. *E.g.*, *Myers v. Experian Inf. Sols. Inc.*, 734 F. Supp. 3d 912, 917 (D. Ariz. 2024); *Ferrell v. to AppFolio, Inc.*, 2024 WL 158103, at *2 (C.D. Cal. Jan. 11, 2024); *McLees v. Experian Inf. Sols., Inc.*, 2024 WL 135940, at *1–2 (C.D. Cal. Jan. 11, 2024); *Saucedo v. Experian Inf. Sols., Inc.*, 2023 WL 4708015, at *2 (E.D. Cal. July 24, 2023); *Capps v. JPMorgan Chase Bank, N.A.*, 2023 WL 3030990, at *1 (E.D. Cal. Apr. 21, 2023); *Sauer v. Experian Inf. Sols., Inc.*, 2022 WL 2163016 (C.D. Cal. May 12, 2022); *Oestereicher v. Equifax Inf. Servs., LLC*, 2024 WL 1199902, at *1, 8 (E.D.N.Y. Mar. 20, 2024); *Pipoly v. Experian Inf. Sols., Inc.*, 2023 WL 5184188, at *2, 3 (N.D. Ga. Aug. 2, 2023), *report and recommendation adopted* 2023 WL 5438171 (N.D. Ga. Aug. 21, 2023); *Abukar v. Experian Inf. Sols. Inc.*, 2023 WL 3394827, at *1 (E.D. Wis. Apr. 11, 2023); *Arciniega v. Experian Inf. Sols., Inc.*, 2023 WL 6803084, at *1 (D. Ariz. Oct. 12, 2023). While those decisions do not bind this Court, the Court notes that the analyses therein mirror that of this opinion and bolster this Court's conclusion.

[5] Plaintiff also rehashes his arguments from his Motion to Exclude the Declaration of Dan Smith (ECF No. 43), arguing that the Smith Declaration is "incompetent evidence." Mem. Opp'n 2, 11–13. Because the Court has already resolved Plaintiff's Motion to Exclude and determined that the Smith Declaration is admissible, *Wells v. Trans Union, LLC*, 2025 WL 475846 (E.D. Va. Feb. 12, 2025), the Court declines to reconsider Plaintiff's arguments to that effect.

**A. The Agreement Constitutes an Enforceable Agreement Between Plaintiff and Experian**

The first—and only—question before the Court is whether the Agreement constitutes an enforceable agreement between the parties. *See Rowland*, 993 F.3d at 257–58. The Court finds that the Agreement is so enforceable.

1. Experian May Enforce the Arbitration Provision.

As a preliminary matter, the Court finds that Experian is a party to the Agreement. Plaintiff repeatedly takes issue with the fact that Experian was not expressly mentioned in the Agreement and, therefore, contends that Experian may not avail itself of the arbitration provision therein. Mem. Opp'n 15, 23. While Experian is not named in the Agreement, the arbitration provision specifically states that the provision extends not only to disputes with CIC and CreditWorks by virtue of ECS, but also to all ECS "affiliates." Smith Decl. Ex. 3 at 7. An "affiliate" is a "corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." *Affiliate*, Black's Law Dictionary (12th ed. 2024). Given that they are sibling corporations, Smith Decl. ¶ 2, ECS and Experian are undoubtedly affiliates. *Meeks v. Experian Inf. Servs., Inc.*, 2022 WL 17958634, at *2 (9th Cir. Dec. 27, 2022) (holding the same). As such, Experian may enforce the arbitration provision against Plaintiff.

2. The Agreement is a Valid Contract.

District courts apply "'ordinary state-law principles that govern the formation of contracts' when deciding whether an arbitration agreement exists between the parties." *Bryce v. SP Plus Corp.*, 2024 WL 3490288, at *3 (E.D. Va. July 18, 2024) (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002)). Here, the appropriate law is that of Mississippi.[6]

---

[6] Both parties apply Virginia law in their briefings. Mem. Supp. Mot. Compel 9; Mem. Opp'n 9. This application, however, runs contrary to the principles of conflicts of law. First, the Agreement does not include a forum selection clause. *See generally* Smith Decl Ex. 3. Second, under both Virginia common law and traditional principles of conflicts of law, questions of contract formation are determined pursuant to the law of the jurisdiction where the

In Mississippi, "an enforceable contract consists of an offer, an acceptance of that offer, and consideration." *Estate of Davis v. O'Neill*, 42 So. 3d 520, 527 (Miss. 2010) (citing *Krebs v. Strange*, 419 So. 2d 178, 181 (Miss. 1982)). However, an agreement cannot be enforced in Mississippi if it is *either* procedurally or substantively unconscionable. *Caplin Enters., Inc. v. Arrington*, 145 So. 3d 608, 614 (Miss. 2014). Substantive unconscionability relates to the fairness of the terms of a contract while procedural unconscionability considers the circumstances of a contract's formation. *Cleveland v. Mann*, 942 So. 2d 108, 114 (Miss. 2006).

Experian's Motion to Compel and accompanying briefing establishes prima facie evidence that the Agreement operated as an enforceable contract between the parties: the Agreement operated as an offer, to which Plaintiff manifested his assent by selecting "Submit Secure Order." Smith Decl. ¶ 4. In exchange for his concessions in the Agreement, Plaintiff received the benefit of the CreditWorks service. *See generally* Smith Decl. Ex. 3. Thus, Experian has demonstrated the basic elements of an agreement between the parties. *See Estate of Davis*, 42 So. 3d at 527.

Plaintiff's arguments do not upset this conclusion. Rather, Plaintiff argues that the Agreement was procedurally unconscionable, thereby rendering it unenforceable.[7] *See* Mem. Opp'n 14–24. Specifically, Plaintiff argues that the Court should not enforce the agreement against him because he lacked actual knowledge of the content of the Agreement. *Id.*

---

contract was made. *Woodson v. Celina Mut. Ins. Co.*, 177 S.E.2d 610, 613 (Va. 1970). Here, the purported contract between Plaintiff and Experian was "made" when Plaintiff clicked on the "Submit Secure Order" button on CreditWorks's website. *See* Smith Decl. ¶ 4; *Seabulk Offshore, Ltd. v. Am. Home Assurance Co.*, 377 F.3d 408, 419 (4th Cir. 2004) ("a contract is made when the last act to complete it is performed"). The contract was "made" in Mississippi, where Plaintiff resided at the time he made his CreditWorks account. Supp. Decl. Norman Wells ¶ 4, ECF No. 69-1.

[7] Plaintiff partially styles his argument as one contesting his assent to specific provisions of the Agreement—a basic element of contract formation—based on his assertion that he lacked actual knowledge of the Agreement's contents. *See* Mem. Opp'n 9–10. In substance, under Mississippi law, this argument is one of procedural unconscionability, so the Court analyzes it as such. *See Caplin Enters.*, 145 So. 3d at 614.

Mississippi law prohibits the enforcement of procedurally unconscionable agreements. *Caplin Enters.*, 145 So. 3d at 614. Citing this prohibition, litigants often argue that "adhesion contracts" are procedurally unconscionable and therefore unenforceable. *See id.* "Contracts of adhesion" are those that are "drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms." *Caplin Enters.*, 145 So. 3d at 615. Procedural unconscionability is easier to prove in the context of an adhesion contract. *Id.* However, such contracts are not automatically unconscionable. *Id.*

For adhesion and non-adhesion contracts alike, Mississippi courts consider six factors to determine procedural unconscionability: "(1) lack of knowledge; (2) lack of voluntariness; (3) inconspicuous print; (4) the use of complex, legalistic language; (5) disparity in sophistication or bargaining power of the parties; and/or (6) lack of opportunity to study the contract and inquire about the terms." *Id.* at 614 (citing *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 177 (Miss. 2006)).

Not all of the unconscionability factors are equal, however. Even in the context of an adhesion contract, Mississippi courts place premium weight on the presence—or lack—of actual pressure or coercion during the formation of the agreement. For instance, in *Pridgen v. Green Tree Financial Servicing Corporation*, 88 F. Supp. 2d 655, 658 (S.D. Miss. 2000), the Southern District of Mississippi determined that, despite the use of fine print, the use of legalistic language, and a disparity in bargaining power an adhesion contract was not procedurally unconscionable because the plaintiff was not under "timing or other pressures' so as to have been prevented from 'contract[ing] with another party on more favorable terms or . . . refrain[ing] from contracting at all.'" *Id.* (alterations in original) (quoting *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d

1202, 1207 (Miss. 1998)). Likewise, in *Russell v. Performance Toyota, Inc.*, 826 So. 2d 718, 726 (Miss. 2002), the Supreme Court of Mississippi determined that an adhesion contract was not procedurally unconscionable, notwithstanding the plaintiff's contention that he lacked knowledge of the contract's terms, because the plaintiff "was not by any means coerced to do business with [the defendant]." *Id.*

In this case, there is certainly a significant discrepancy between Plaintiff's and Experian's bargaining power, and Plaintiff contends that he lacked knowledge of the content of the Agreement. *See* Mem. Opp'n 3. Further, the Court notes that the Agreement would constitute an adhesion contract, since it was unilaterally prepared by ECS. *Caplin Enters.*, 145 So. 3d at 615. Under Mississippi law, however, these two factors alone are insufficient to demonstrate procedural unconscionability, even in the context of an adhesion contract. Like in *Pridgen* and *Russell*, there is no reason to believe that Plaintiff experienced "timing or other pressures" in selecting the "Submit Secure Order" button. *Pridgen*, 88 F. Supp. 2d at 658. Upon reading[8] the CreditWorks acceptance statement warning that clicking the "Submit Secure Order" button constituted assent to the Agreement, Plaintiff was free to leave the website. Yet, he undisputedly clicked the button and created a CreditWorks account. Smith Decl. ¶ 3; Mem. Opp'n Ex. 4 at 2. Accordingly, the Court rejects Plaintiff's argument that the Agreement suffers from procedural unconscionability and determines that it constitutes an enforceable contract between the parties.

---

[8] Mississippi law charges all parties with reading what he or she agrees to. *Smith v. Express Check Advance*, 153 So. 3d 601, 610 (Miss. 2014). Of course, a party may escape this charge if a contract term was hidden or obfuscated by the offering party. *See id.* at 609–10. However, that is not the case here. Plaintiff does not dispute that he clicked the "Submit Secure Order" button, which appeared directly below the acceptance statement warning that, in so doing, he manifested his assent to the Agreement. Smith Decl. Ex. 2, ECF No. 38-1 at 10. This notice is in the same font size as the preceding text, which asks the website visitor to submit a username and password. *Id.* Moreover, within the notice, the phrase "Terms of Use" is emphasized in blue text, which both notifies the visitor that the phrase is a hyperlink and draws the eye to the acceptance statement generally. *Id.* Accordingly, the Court cannot say that the notice was hidden or obfuscated. As such, under Mississippi law, the Court presumes that Plaintiff read the notice and therefore understood the consequences of clicking the "Submit Secure Order" button.

**B. Because the Agreement is Enforceable, the Court Must Grant the Motion**

Plaintiff argues that there are remaining issues beyond that of contract formation which the Court must resolve and asserts that his substantive FCRA claims against Experian do not fall within the scope of the Agreement's arbitration provision. Mem. Opp'n 3, 24–27.

Given the Agreement's FCRA carve-out and the arbitration provision's limited application, Smith Decl. Ex. 3 at 7–8, the Court appreciates the logic of Plaintiff's argument. Yet, where there is an enforceable agreement between parties delegating "all issues" to an arbitrator, the *only* question before a reviewing court is that of contract formation, i.e., whether the contract is rightly enforced against this plaintiff at all. *Rowland*, 993 F.3d at 257–58. This is the case because "all issues" encompasses "gateway" questions such as the scope and enforceability of the arbitration provision, and "any doubts concerning the scope of arbitral issues [are] resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25; *Rowland*, 993 F.3d at 257–58. In other words, if an enforceable agreement refers "all issues" to an arbitrator, the arbitrator has the sole authority to determine whether a plaintiff's substantive claims fall within the scope of the arbitration agreement. *Rowland*, 993 F.3d at 257–58. Critically, this question is the arbitrator's even if the district court finds the defendant's argument to that effect "wholly groundless." *Henry Schein, Inc.*, 586 U.S. at 71.

The Court has settled the only issue properly before it: whether there exists an enforceable contract delegating "all issues" to an arbitrator.[9] *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24; *see*

---

[9] There is a remaining question regarding what version of the Agreement applies, *compare* Smith Decl. ¶ 5 *and* Smith Decl. Ex. 3 (describing and attaching the terms of the Agreement as they existed on the date that Plaintiff cancelled his CreditWorks membership), *with* Smith Decl. ¶ 5 *and* Smith Decl. Ex. 4, ECF No. 38-1 at 44–58 (describing and attaching the terms of the Agreement as they existed in 2017, on the day Plaintiff created his CreditWorks membership), but that issue is not before the Court. After finding an enforceable agreement between the parties to delegate "all issues" to arbitration by virtue of the Agreement, the Court must reserve all remaining issues for the arbitrator. *Henry Schein, Inc.*, 586 U.S. at 71; *Smith v. Experian Inf. Sols., Inc.*, 2023 WL 6057377, at *3–4 (D.N.J. Sept. 14, 2023) ("Regardless of which [version of the Agreement] is in effect, the Plaintiff would still be

*also Rowland*, 993 F.3d at 257–58; *Henry Schein, Inc.,* 586 U.S. at 71.  It is for the arbitrator to engage with the merits of Plaintiff's remaining arguments.  As such, the Court must grant the Motion to Compel.

## V. CONCLUSION

Because the Agreement constitutes an enforceable agreement between the parties and delegates "all issues" to an arbitrator, the Motion to Compel will be granted.

An appropriate Order shall issue.

                                                           /s/ *RCY*
                                        Roderick C. Young
                                        United States District Judge

Date: February 18, 2025
Richmond, Virginia

---

subject to a valid arbitration clause . . . . [The question of which version applies] is an issue of scope and, therefore, should be referred to the arbitrator.").